## Abolin, Appellant, *v.* Farmers Amer. Mut. Fire Ins. Co. of Bucks County.

Argued November 18, 1930.

Before Trex-
ler, P. J., Keller, Linn, Gawthrop, Cunningham,
Baldrige and Whitmore, JJ.

*Webster Grim,* and with him *Harry E. Grim* of
*Grim & Grim,* for appellant.

*Thos. Ross,* for appellee.

Opinion by Keller, J., January 30, 1931:

The policy of fire insurance in suit contained a
provision that "no suit or action on this policy for
the recovery of any claim shall be sustainable in any
court of law or equity......unless commenced within

twelve months next after the fire, storm or lightning causing the loss for which claim is made."

The property insured was destroyed by a fire which occurred on January 8, 1926. Suit was not brought on the policy until January 28, 1927, twenty days more than "twelve months next after the fire causing the loss." The evidence did not show any waiver by the defendant of this provision of the policy. The court below entered a compulsory nonsuit which it refused to take off. In this we discover no error.

The provision of the policy above quoted is not ambiguous or uncertain. Appellant endeavors to interpret it so as to make it read "twelve months next after the right of action accrued." But that is not its wording. It means just what it says, "twelve months next after the fire causing the loss for which claim is made." It is too plain for misunderstanding or disagreement. The policy provided in addition to the clause above, that notice of loss was to be given by the member within thirty days after he sustained any loss; and that suit might be prosecuted and maintained if payment was withheld for more than ninety days after the company was duly notified of such loss. This gave the assured at least eight months within which to decide whether he would bring his action on the policy. The period is not unreasonable; it is lawful for the parties so to contract, and such a provision is binding on them: Atlas Mutual Ins. Co. v. Downing, 12 Pa. Superior Ct. 305; Wernick v. Pittsburgh Underwriters Agency, 90 Pa. Superior Ct. 186; North Western Ins. Co. v. Phoenix Oil & Candle Co., 31 Pa. 448; Watters v. Fisher, 291 Pa. 311; King v. Ins. Co., 47 Hun. 1; Schroeder v. Keystone Ins. Co., 2 Phila. 286. We are not concerned, therefore, with decisions from other states construing provisions in different language, or contorting by main strength this same language to mean other than it plainly says.

This provision being for the benefit of the insurance company might be waived by it: Fritz v. British American Assurance Co., 208 Pa. 268; Flynn v. Ins. Co., 4 Pa. Superior Ct. 137, 141; but it is the appellant's misfortune that his proof on the trial did not measure up to the allegations in his statement of claim, nor make out a case warranting a finding that the defendant company had waived the limitation or done anything to estop itself from presenting it as a defense in this action. See Hocking v. Howard Ins. Co., 130 Pa. 170; Waynesboro Mut. Fire Ins. Co. v. Conover, 98 Pa. 384. The defendant company was not negotiating with the plaintiff looking to a settlement; it did nothing that lulled him into inaction until the time for bringing suit had passed, as in the cases cited to us by appellant. The most that the plaintiff could show was that five or six months after the fire, and months before the limitation in the policy became effective, when the plaintiff asked whether the company was going to pay his claim he was told by the managers that they had not decided whether they would pay him or arrest him, apparently for being concerned in the burning of the insured property. There was certainly nothing in this statement that was by way of inducement to withhold bringing suit, or that evidenced any intention on the part of the company to waive this provision of the contract. This disposes of the first assignment of error.

As to the second, it is only necessary to say that the person who acted as interpreter for the plaintiff was his agent, not the insurance company's. If he misinterpreted to the plaintiff the meaning of what the defendant's officers and managers said to him concerning the claim, the insurance company was not responsible. At the trial he testified for the plaintiff as to just what had occurred between the parties. What plain-

tiff may have understood when the conversations were interpreted to him, contrary to what had really taken place, was not admissible in evidence.

The assignments of error are overruled and the judgment is affirmed.