John and Denise McELHINEY

v.

ALLSTATE INSURANCE COMPANY.

No. Civ.A. 98–2529.

United States District Court,
E.D. Pennsylvania.

Jan. 25, 1999.

Stanley B. Cheiken, Abramson, Freedman & Thall, Philadelphia, PA, for John McElhiney and Denise McElhiney, plaintiffs.

John D. Brinkmann, Emily I. Remphrey, Dugan, Brinkmann, Maginnis and Pace, Philadelphia, PA, for Allstate Insurance Company, defendant.

## *MEMORANDUM*

BARTLE, District Judge.

This is an action arising out of a homeowners insurance policy issued by the defendant, Allstate Insurance Company ("Allstate"), to plaintiffs John and Denise McElhiney. Count I of the complaint asserts that Allstate has breached the insurance contract by refusing to pay for a covered property loss. Count II avers that defendant has acted in bad faith, in violation of 42 Pa.Cons.Stat.Ann. § 8371, by denying coverage and by failing to conduct a reasonable investigation to determine whether plaintiffs' claim was covered. Before the court is Allstate's motion for summary judgment on Count I, the breach of

contract claim, on the ground that it is time-barred.

We may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We review all evidence and make all reasonable inferences from the evidence in the light most favorable to the non-movant. *See Wicker v. Consolidated Rail Corp.,* 142 F.3d 690, 696 (3d Cir.), *cert. denied,* — U.S. ——, 119 S.Ct. 530, 142 L.Ed.2d 440 (1998).

On May 8, 1997, the McElhineys had their home treated by a termite and pest extermination company. Within days after the extermination, they and their children allegedly became physically ill, suffering from symptoms that included burning eyes, headaches, dizziness, and nausea. They left their home and found living accommodations elsewhere. According to their complaint, their home was, and continues to be, contaminated and uninhabitable.

Four days after the extermination took place, the McElhineys notified Allstate, from whom they had purchased a "Deluxe Homeowners Policy," of the loss they had suffered as a result of the "negligently" conducted extermination. At this early stage, an Allstate employee told John McElhiney that coverage was doubtful. On May 19, 1997, without having conducted any physical inspection of the McElhineys' home and without having spoken to anyone from the exterminating company, Allstate orally informed the McElhineys that there was no coverage for their claim. The spokesman explained that the contamination was not "sudden and accidental."

Plaintiffs retained counsel. On February 9, 1998, their attorney wrote to Allstate urging it to adjust the McElhineys' claim and asserting that there was coverage for their loss. His letter warned: "If ... Allstate continues to deny its obligation to adjust this claim, the McElhineys will have no choice but to bring suit against Allstate.... [W]e expect your written response within five (5) business days. Thereafter, suit will be filed." On March 2, 1998, in its letter responding to plaintiffs' attorney, Allstate reiterated that there was no coverage for the McElhineys' claim. Plaintiffs filed this lawsuit on May 15, 1998.

Allstate argues that the breach of contract count is untimely because of the one-year limitation clause set forth in the policy. The clause reads:

**Suit Against Us**

No suit or action may be brought against **us** unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

It is undisputed that the "inception of loss or damage," if any, occurred on May 8, 1997 and that this action was filed more than one year later.

■ Pennsylvania has a four-year statute of limitations that applies to most contract claims. *See* 42 Pa.Cons.Stat.Ann. § 5525. Absent a statutory prohibition, parties may contract for a shorter limitations period as long as it is reasonable. *See Marshall v. Aetna Cas. & Sur. Co.,* 643 F.2d 151, 152 (3d Cir.1981); *Lardas v. Underwriters Ins. Co.,* 426 Pa. 47, 231 A.2d 740, 741–42 (Pa.1967). A one-year time limit meets this test. *See, e.g., Fennell v. Nationwide Mut. Fire Ins. Co.,* 412 Pa.Super. 534, 603 A.2d 1064, 1068 (Pa.Super.), *appeal denied,* 533 Pa. 600, 617 A.2d 1274 (Pa.1992); *Hospital Support Services, Ltd. v. Lumbermens Mut. Cas. Co.,* No. CIV.A. 88–2963, 1989 WL 32771, at *4 (E.D.Pa. April 3, 1989), *aff'd,* 889 F.2d 1311 (3d Cir.1989); 40 Pa.Stat.Ann. § 636.

■ Plaintiffs contend, however, that the Pennsylvania Insurance Company Law of 1921 mandates a three-year limitations period for a casualty insurance loss such as is involved here. Plaintiffs rely on 40 Pa.Stat. Ann. § 753, which provides in relevant part:

(A) Required Provisions ... [E]ach such policy delivered or issued for delivery to any person in this Commonwealth shall

contain the provisions specified in this subsection. . . .

(11) A provision as follows:

Legal Actions: No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

Unfortunately for plaintiffs, § 753 applies only to health and accident insurance policies. The heading inserted by the General Assembly into the Insurance Company Law of 1921 preceding §§ 751–764 is entitled "Health and Accident Insurance."[1] Consistent with the heading, § 751, the first section in this part of the statute as originally enacted, refers only to "polic[ies] of insurance against loss from sickness, or loss or damage from bodily injury or death of the insured by accident." Sections 752 and 753, which immediately follow, begin respectively "no *such* policy shall be delivered or issued for delivery to any person in this Commonwealth unless ..." and "... each *such* policy delivered or issued for delivery to any person in this Commonwealth shall contain. . . ." (emphases added). "[S]uch policy" clearly means the types of policies described in the antecedent § 751.

A further reading of § 753 itself confirms our conclusion that it pertains solely to health and accident insurance. It requires that "such" policies contain certain terms if they are to be approved by the Insurance Commissioner for issuance and delivery in Pennsylvania. For example, specific provisions must be included on "Physical Examinations and Autopsy," "Change of Occupation," and "Misstatement of Age." 40 Pa.Stat. Ann. § 753(A)(10), (B)(1), (B)(2). While this subject matter, with its obligatory language, is perfectly appropriate for health and accident insurance, it would be completely anomalous for a casualty policy covering proper-

ty damage. As we are reminded by the Statutory Construction Act, the General Assembly does not intend "a result that is absurd ... or unreasonable." 1 Pa.Cons. Stat.Ann. § 1922(1).

The Allstate Deluxe Homeowners Policy sold to the McElhineys is not a health and accident policy, and the McElhineys do not contend otherwise. The losses they claim are for contamination to the home, contamination to their personal property,[2] and living expenses. Plaintiffs have not alleged any insurance coverage for "loss from sickness, or loss or damage from bodily injury or death of the insured by accident." 40 Pa. Stat.Ann. § 751 (now repealed).

We recognize that § 751, discussed above, was repealed, effective February 16, 1997, by the Accident and Health Filing Reform Act. *See* 40 Pa.Stat.Ann. § 3814(a). This repeal does not affect our analysis. First, the repeal was effective after the issuance of the McElhineys' policy and is not retroactive. *See* 1 Pa.Cons.Stat.Ann. § 1926. In addition, the Accident and Health Filing Reform Act updated the insurance law to bring within its regulatory ambit modern entities, like health maintenance organizations, which did not exist in 1921. The new Act explicitly requires that all health and accident insurance policies issued by hospital plan corporations and professional health services plan corporations must comply with § 753 (§ 618 in the session law). *See* 40 Pa.Stat.Ann. § 3812(a)(2).

■ In support of their argument for a statutory three-year limitations period, plaintiffs cite *Margolies v. State Farm Fire and Cas. Co.*, 810 F.Supp. 637 (E.D.Pa.1992). Relying on § 753(A)(11), the court held that the insured had three years to file suit for a casualty loss (water damage) to personal property, rather than the one year written into the policy. The court went on at some length to explain the differences between fire insurance, as defined in the law, and casualty

---

[1]. These sections were labeled §§ 616–629 in the session law. Section 618 of the session law is now codified as § 753.

[2]. Plaintiffs have conceded that there is no coverage for their personal property loss and therefore have agreed to withdraw this portion of the claim.

insurance.[3] None of the parties, however, apparently drew the court's attention to the fact that § 753 was in a part of the Insurance Company Law of 1921 which regulated accident and health insurance only. We have found no other case that followed the holding of *Margolies* on this limitations issue, and we decline to do so. The one-year contractual suit limitations period in the Allstate policy at issue here is valid.

■ Next, we address whether Allstate's bad faith conduct precludes it from asserting the contractual suit limitation clause. The McElhineys do not maintain that the defendant in any way misled them into believing the clause would not be enforced or that defendant lulled them into not filing their legal action within the limitations period. Instead, plaintiffs argue that the defendant may not invoke the one-year limitations period because of its bad faith conduct in failing to investigate and pay their claim.

Plaintiffs rely upon the plurality opinion in *Diamon v. Penn Mutual Fire Ins., Co.*, 247 Pa.Super. 534, 372 A.2d 1218 (Pa.Super.1977), and two opinions by the Court of Appeals of the Third Circuit: *Hospital Support Services, Ltd. v. Kemper Group, Inc.*, 889 F.2d 1311 (3d Cir.1989), and *Leone v. Aetna Cas. & Sur. Co.*, 599 F.2d 566 (3d Cir.1979). *Diamon* does not save plaintiffs' contract claim. There, the plaintiff policyholders argued that the insurer's instigation of criminal charges against one of them suspended the suit limitation period. The plurality agreed, noting that the unfounded criminal charges induced the insureds not to sue the insurer until the statute of limitations for the relevant crime expired. *See Diamon*, 372 A.2d at 1221–22. We do not think the opinion establishes the sweeping rule advanced by plaintiffs. Even if it is the law in Pennsylvania, the bad faith conduct alleged in *Diamon* involved an insurer which, without any apparent basis, caused criminal charges to be brought against the insured. There are no allegations here that Allstate accused the McElhineys of any such wrongdoing.

*Leone* and *Hospital Services* do not salvage the McElhineys' contract claim, either. In *Leone*, the Court of Appeals for the Third Circuit reversed an order dismissing plaintiff's complaint as untimely under the terms of the policy. The court explained that the plaintiff's pleading was sufficiently broad to survive a motion to dismiss because it could be read as including an allegation that during the course of investigating his claim, the insurance company had accused him of criminal conduct. The court stated, "the Diamon Court adopted a rule that an insuror's *bad faith accusation of criminal conduct* on the part of an insured, *or such an allegation engendered by a negligently conducted investigation*, would toll the suit limitation clause." *Leone*, 599 F.2d at 569 (emphasis added). *Hospital Services* addressed an issue that has no direct bearing on the issue we consider here. The opinion discussed as background both *Diamon* and *Leone*, but that discussion does not support the broad rule advanced by plaintiffs.

If allegations of bad faith conduct by an insurer could automatically suspend a time limitation clause, such a clause would be virtually meaningless. Accepting the facts in the light most favorable to plaintiffs, we conclude that any bad faith failure to investigate and pay an insurance claim on the part of Allstate does not preclude it from asserting the suit limitation clause against plaintiffs on their breach of contract claim. *Cf. Waldman v. Pediatric Services of America, Inc.*, No. CIV.A. 97–7257, 1998 WL 770629, at *9 (E.D.Pa. Nov.5, 1998); *March v. Paradise Mut. Ins. Co.*, 435 Pa.Super. 597, 646 A.2d 1254, 1256–57 (Pa.Super.1994), *appeal denied*, 540 Pa. 613, 656 A.2d 118 (Pa.1995).

■ Finally, plaintiffs contend that their failure to comply with the suit limitation clause in the policy is excused because of Allstate's prior breach of contract in denying coverage and refusing to pay their claim. This argument is without merit. If plaintiffs'

---

**3.** The difference was apparently significant to the parties and the court because Pennsylvania law provides for a one-year suit limitation period in the standard fire insurance policy. *See* 40 Pa. Stat.Ann. § 636. We need not decide whether this issue is valid or relevant under the present circumstances.

argument were correct, no time limitation provision in a policy or in any contract, for that matter, would ever be enforceable.

■ Plaintiffs' action was not filed within one year of the loss as required under the policy. We will grant defendant's motion for summary judgment on plaintiffs' contract claim on the ground that it is time-barred.