**READING TUBE CORPORATION,**
**Plaintiff,**

v.

**EMPLOYERS INSURANCE OF**
**WAUSAU, Defendant.**

**No. 95–CV–6301.**

United States District Court,
E.D. Pennsylvania.

Oct. 22, 1996.

Ronald L. Williams and Alan N. Harris, Stevens & Lee, Reading, PA, for Plaintiff.

Bruce L. Phillips, Venzie, Phillips & Warshawer, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

## INTRODUCTION

This diversity action concerns an alleged breach of a performance bond. The plaintiff is Reading Tube Corporation ("Reading Tube"), a Pennsylvania company that contracted to purchase an industrial furnace from Advanced Furnace Technology, Inc. ("AFTEC"), another Pennsylvania company, in the fall of 1992. In December 1992, Defendant Employers Insurance of Wausau ("Wausau"), a Wisconsin corporation, issued a performance bond in the amount of $677,755, naming Reading Tube as obligee. On August 25, 1995, Reading Tube declared AFTEC in default and requested that Wausau honor the performance bond. When Wausau refused, taking the position that Reading Tube had wrongfully terminated its contract with AFTEC, this lawsuit ensued.

The pending complaint contains two claims. In the first, Reading Tube seeks damages arising from Wausau's alleged breach of the performance bond; in the second, Reading Tube requests punitive damages, costs, attorney's fees, and interest pursuant to Pennsylvania's bad faith statute, 42 Pa.Cons.Stat.Ann. § 8371, for Wausau's alleged bad faith in refusing to honor its obligations under the performance bond.

At the conclusion of discovery, the parties both filed motions for summary judgment pursuant to Fed.R.Civ.P. 56(c). Wausau argues that it is entitled to summary judgment because the contract on which Reading Tube bases its claim(s) is illegal, and violates significant public policies of Pennsylvania. In the event the matter proceeds to trial, Wausau has asked the Court, in its authority under Fed.R.Civ.P. 42(b), to try the issue of liability before proceeding to the issue of damages.

Reading Tube makes several arguments in its summary judgment motion. First, Reading Tube argues that it is clear that the furnace does not perform in accordance with the specifications in the contract or in the subsequent corrective plan to which both parties agreed. Reading Tube also argues that Wausau breached its obligations under the performance bond in bad faith, and that Reading Tube's damages have been established to a certainty. Finally, Reading Tube opposes the motion to bifurcate.

This Memorandum therefore addresses (1) Reading Tube's motion for summary judgment (2) Wausau's motion for summary judgment and (3) Wausau's motion to bifurcate.

## FACTUAL SUMMARY

In the fall of 1992, AFTEC and Reading Tube entered into a written agreement pursuant to which AFTEC was obligated to design, manufacture and install an industrial furnace in exchange for $677,755. The contract required the furnace to be able to heat copper billets to a temperature of 1900 degrees Fahrenheit so that they could be produced at a rate of 40,000 pounds of copper billets per hour. AFTEC was to install the furnace by April 16, 1993. On December 3, 1992, Reading Tube and AFTEC modified their agreement to change the payment terms and to provide for the issuance of a performance bond. Wausau issued the bond in the amount of $677,755 naming Reading Tube as obligee, and later entered into an agreement with Universal Refractories, Inc. ("Universal"), AFTEC's parent company, which obligated Universal to indemnify Wausau in the event it incurred liability under the performance bond.

AFTEC did not commence installation of the furnace until the early part of 1994. Throughout 1994 and into 1995, AFTEC continued to make corrections to the furnace in

an effort to bring its performance within the parameters called for in the contract, apparently without success. As a result, on January 27, 1995, Reading Tube notified Wausau that it was considering declaring AFTEC in default and requested a meeting among the three concerned parties, as required under the performance bond. The meeting was held on February 15, 1995, and on April 19, 1995, AFTEC and Reading Tube agreed to a corrective plan of action ("CPA") in which the parties acknowledged that the furnace cannot achieve a production rate of 40,000 pounds per hour. Further, AFTEC agreed to guarantee a minimum rate of 35,224 pounds per hour. Wausau agreed that its obligations under the performance bond would continue under the CPA.

By August 1995, the furnace still was not performing in accordance with the specifications set forth in the CPA. Representatives from Reading Tube, AFTEC, Universal, and Wausau reconvened on August 17, 1995, to discuss the possibility of corrective action. Reading Tube claims that at this meeting, AFTEC allegedly admitted that it could not comply with the CPA. Accordingly, on August 25, 1995, Reading Tube notified AFTEC that it was formally declaring a default under the contract. Reading Tube then notified Wausau that it was requesting the latter party to undertake its obligations under the performance bond.

After Reading Tube declared AFTEC in default, Lee Thompson, AFTEC's executive vice president, contacted Sherry Tanck, the Wausau bond claims representative in charge of the performance bond issued on behalf of AFTEC. According to notes taken by Ms. Tanck, Mr. Thompson expressed his concern that Reading Tube would settle for the penal sum of the performance bond. Mr. Thompson was of the opinion that the project would have been completed had AFTEC had the opportunity to replace three valves that AFTEC had previously suggested replacing. Mr. Thompson communicated this view to Wausau. On September 8, 1995, Wausau contacted Reading Tube to inform it of its decision not to honor the performance bond because of AFTEC's position that they had substantially performed their obligations under the contract. Wausau further stated that AFTEC was willing to address these items but because of Reading Tube's termination of the contract, AFTEC was unable to provide any further service. Finally, Wausau informed Reading Tube that since AFTEC disputed Reading Tube's claim that AFTEC was in default, Wausau, as surety, would respect AFTEC's position, and the dispute between the parties would have to be resolved by a finder of fact.

## DISCUSSION

This Court is authorized to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any material factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The summary judgment standard requires the moving party to show that it is so one-sided that it should prevail as a matter of law. *Id.* at 252, 106 S.Ct. at 2512. Nevertheless the non-moving party must raise more than a scintilla of evidence in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989). Further, the non-moving party cannot survive a summary judgment motion by relying on unsupported assertions. *Id.*

■ The mere fact that the parties have filed cross-motions under Rule 56(c) does not mean that the case will necessarily be resolved at the summary judgment stage. Each side must still establish that no genuine issue of fact exists and that it is entitled to judgment as a matter of law. Therefore, the court must consider the motions separately. *Rains v. Cascade Industries Inc.*, 402 F.2d 241, 245 (3d Cir.1968); *Tomalewski v. State Farm Ins. Co.*, 494 F.2d 882, 884 (3d Cir. 1974); *Coolspring v. American States Life Ins. Co.*, 10 F.3d 144, 150 (3d Cir.1993).

I. *Reading Tube's Motion for Partial Summary Judgment*

A. *Count I*

Reading Tube requests summary judgment with respect to the first count of its complaint, for Wausau's alleged failure to perform under the performance bond. Reading Tube makes several principal arguments. First, Reading Tube argues that the record establishes that the furnace does not perform in accordance with the contract or CPA, since Wausau's expert, Mr. Thome, issued a report that admits this fact. Wausau responds by claiming that Mr. Thome's report only states the amount of billets the furnace was incapable of heating, but does not state how much it was capable of heating. In addition, Wausau argues that even though the contract and the CPA required certain pounds of billets to be heated per hour, the contract and the CPA listed the billet weight to be 1,036 pounds, yet Reading Tube's expert, Mr. Duchan testified that the weight is 1,007 pounds. Since the weight of the billets affects the amount of billets the furnace can heat in an hour, and Wausau claims that Mr. Duchan received one of the drafts of the CPA which specified the incorrect weight, Wausau argues that Reading Tube was aware that AFTEC's ability to meet the CPA's requirements would be affected by this misstatement. Wausau also points out that the amount of billets the furnace can produce depends on the amount of billets the extrusion press can receive and extrude. Since the extrusion press can only extrude between 20 and 25 billets an hour on average, according to Mr. Duchan, and Mr. Duchan had testified to the weight of the billets to be 1,007 pounds on average, Wausau calculated the amount of billets that could be produced per hour to be 20,140 to 25,175 pounds per hour, significantly below the contract and the CPA requirements. Wausau's claims that Reading Tube's awareness of these mistakes affects Wausau's liability under the performance bond.

Second, Reading Tube argues that Wausau's denial of Reading Tube's claim was improper as a matter of law since Wausau did not conduct its own investigation as to whether AFTEC met its obligations, instead Wausau allegedly relied on AFTEC's assurances of performance. Wausau claims that Sherry Tanck repeatedly asked Reading Tube for any documents it may have relating to AFTEC's alleged breach of the contract and CPA.

Third, Reading Tube argues that there is undisputed evidence that its damages are in excess of the performance bond sum. Wausau claims that Reading Tube has not proven the amount of these damages to a certainty. Wausau argues that Reading Tube has not proven its entitlement to damages for the delay caused by non-performance of the contractor because Reading Tube has not stated clearly which contract, the original or the CPA, it is alleging AFTEC failed to perform. Wausau also points out that Reading Tube was still using the furnace as of October 1995, after the contract was terminated, and that the mistake of fact concerning the billet weight affects Wausau's liability as a surety.

■ We find that there are material issues of fact for the jury to decide. First, the jury must decide whether AFTEC was still in the process of correcting the problems with the furnace when Reading Tube declared a default and whether Reading Tube was in fact aware of the mistakes in stating the billet weight. The jury must also determine whether Wausau took appropriate steps to determine if AFTEC was in breach. Finally, Reading Tube has not established the amount of its damages to a certainty. The jury must decide whether the furnace was still being used by Reading Tube even after it declared AFTEC to be in default, and whether the assumptions that Reading Tube used in its calculations for lost profits were accurate. *See e.g., Jackson v. Wessel,* 92 B.R. 987, 994 (E.D.Pa.1988) (jury considered whether sufficient proof of lost profits was presented). For example, Reading Tube bases its assessment of liability on assumptions that it could sell all of its product had the furnace produced at the required capacity, and that the furnace would have been operated at a certain number of hours per day, assumptions which Wausau disputes.

We therefore find that there are sufficient material factual issues to be submitted to the

jury on the first count of Reading Tube's complaint.

B. *Count II*

With respect to the second count of its complaint, Reading Tube requests summary judgment for Wausau's alleged bad faith under 42 Pa.Cons.Ann. § 8371, in refusing to honor its obligations under the performance bond. Reading Tube argues that there are no genuine factual issues regarding Wausau's bad faith as this is an objective standard to be determined by Pennsylvania statutory law. Nevertheless, Reading Tube does request a trial with respect to its claim for punitive damages.

Wausau argues that Reading Tube has not proved that there was bad faith. Wausau points out that its representative Sherry Tanck repeatedly attempted to obtain documents from Reading Tube, and that Reading Tube has only alleged that Wausau acted in self interest. Self interest, Wausau argues, is not the same as bad faith, which requires proof of an improper purpose.

■■■ Pennsylvania statutory law provides that a court may award damages if it finds that an insurer has acted in bad faith towards the insured. 42 Pa.Cons.Stat.Ann. § 8371. Courts have extended this statute to actions against sureties for failure to honor performance bonds. *See Turner Const. Co. v. First Indem. of America Ins. Co.,* 829 F.Supp. 752 (E.D.Pa.1993) (considering whether there were sufficient facts to entitle plaintiff to damages against performance bond surety for bad faith under section 8371). Furthermore, courts have used the definition in Black's Law Dictionary as the definition of bad faith under the statute. *See e.g., Younis Bros. & Co. v. CIGNA Worldwide Ins. Co.,* 899 F.Supp. 1385, 1396 n. 6 (E.D.Pa.1995); *Klinger v. State Farm Ins. Co.,* 895 F.Supp. 709, 713 (M.D.Pa.1995). This definition of bad faith requires proof of a "dishonest purpose", a "state of mind affirmatively operating with ... ill will", and in insurance contexts, the "frivolous refusal" to pay policy proceeds. Black's Law Dictionary 139 (6th ed. 1990). These requirements require factual determinations by the jury of the state of mind of the defendant. Wausau has alleged with sufficient detail, conduct such that a

jury could find that they did not act in bad faith. Accordingly, Reading Tube's request for summary judgment on this count is denied.

*II. Wausau's Motion for Summary Judgment*

Wausau's main argument in its motion for summary judgment is that the original contract and CPA are illegal under Pennsylvania statutory law. Since the contract and CPA are illegal, Wausau argues, the performance bond is illegal, and so there can be no damages for failure to comply with an illegal performance bond.

■■■ Pennsylvania's "Engineer, Land Surveyor and Geologist Registration Law" requires those who engage in the practice of engineering to be licensed and registered in the state to do so. 63 Pa.Stat.Ann. § 150. The practice of engineering is defined as the "application of mathematical and physical sciences for the design of public or private buildings, ... machines, equipment ..." 63 Pa.Stat.Ann. § 149(a)(1). Nevertheless, licensing and registration is not required under this statute if the practice of engineering is done "in connection with or incidental to products of, or nonengineering services rendered by, [a] corporation or its affiliates." 63 Pa.Stat.Ann. § 152(g).

There are few cases which interpret the meaning of engineering under this statute. Those cases that interpret the statute to require licensing in accordance with its provisions, involve situations in which one party held himself out as an engineer, and sought to recover payment for his engineering services. *See Brennan v. Balut,* 73 Pa.D. & C. 362 (1951) (refining apparatus used in preparing and selling furs constituted engineering and plaintiff could not recover for such services); *Segur v. Hastings,* 79 Pa. D. & C. 371, 375 (1951) (developing operation of cutting and booking gold leaf constituted engineering).

In this case, Wausau has not alleged that AFTEC held itself out as an engineering concern. Furthermore, section 152 of the licensing statute exempts manufacturing concerns from conforming to the requirements

of the act if any practice of engineering done by them is incidental to the manufacturing of their products. 63 Pa.Stat.Ann. § 152(g).

We therefore hold that AFTEC was not unlawfully engaging in the practice of engineering and the contract is not void under Pennsylvania law. Furthermore, because of our holding, we need not address Reading Tube's arguments that estoppel would prevent Wausau from asserting this defense at this stage of the litigation, and that Reading Tube's bad faith claim would still survive a finding that the contract was illegal.

### III.  Wausau's Motion to Bifurcate

In the alternative, Wausau asks the Court to try the issue of liability on both counts before Reading Tube presents any evidence on the issue of damages. Wausau contends that bifurcation would be in the interest of judicial economy and efficiency, and prevent unfair prejudice. Wausau argues that if Reading Tube fails to prove that Wausau is liable in its substantive claims, then there will be no need for it to present evidence on damages. Wausau points out that in order to succeed in its bad faith claims, Reading Tube must prove liability by a higher standard of clear and convincing evidence. Wausau further points out that Reading Tube has submitted information in support of its summary judgment motion concerning its damages in excess of the performance bond sum. Wausau contends that such evidence is irrelevant since it can only be liable up to the face amount of the bond under Count I, and for any of Wausau's alleged bad faith proven under Count II, neither of which depend on whether Reading Tube suffered injury above the penal bond sum. Wausau also argues that evidence of Reading Tube's damages caused by parties other than Wausau, especially AFTEC, is irrelevant, and Reading Tube will confuse the jury if allowed to present such evidence at trial.

Reading Tube argues that it is entitled to present evidence of damages above the face amount of the bond because Wausau will attempt to refute certain items of damages that Reading Tube will present. Reading Tube claims that it will therefore need to establish that it is clearly entitled to the penal bond sum by presenting all of its evidence on damages. Reading Tube also argues that the effect of Wausau's refusal to act is relevant to the issue of bad faith and that if the trials are separated, Reading Tube will be forced to present most of its evidence twice.

Motions to conduct separate trials are within the court's discretion when the separation will "further ... convenience [and] avoid prejudice." Fed.R.Civ.P. 42(b). The party seeking separate trials has the burden of proving that it is necessary. *See e.g., McCrae v. Pittsburgh Corning Corp.,* 97 F.R.D. 490, 492 (E.D.Pa.1983).

Wausau has failed to show that separate trials are necessary. Wausau cannot prevail in its motion for separate trials merely because it believes that Reading Tube may try to present prejudicial evidence; Wausau can always object to any prejudicial evidence Reading Tube seeks to present if and when Reading Tube makes that attempt. Neither can Wausau successfully argue that it should prevail on its motion for separate trials because it believes that Reading Tube will not be able to meet its burden of establishing liability, and it wishes to avoid issues of damages altogether. The jury can decide issues of liability and damages simultaneously. Accordingly, Wausau's request for bifurcation is denied.

An appropriate Order follows.

### ORDER

AND NOW, this 22nd day of October, 1996, upon consideration of Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment, both motions are DENIED.

FURTHER, upon consideration of Defendant's Motion for Separate Trials, said motion is DENIED.