## Riethmiller v. Bedford County Grange Mutual Insurance Co.

C.P. of Mercer County, no. 1999-1014.

*P. Raymond Bartholomew,* for plaintiffs.
*Charles W. Garbett,* for defendant.

FORNELLI, *P.J.,* May 30, 2001—The matter for disposition is defendant's motion for summary judgment. For the reasons set forth hereafter, defendant's motion will be denied.

This matter arises out of a fire that occurred on April 10, 1997 in the home of plaintiffs Harry F. Riethmiller and Judith Ann Riethmiller. The fire caused the total loss of the structure and its contents.[1] At the time of the fire, plaintiffs' home was insured under a fire insurance policy issued by defendant Bedford County Grange Mutual Insurance Company. The policy provided coverage for fire loss up to the following limits: $50,000 for real property; $35,000 for unscheduled personal

---

1. Plaintiffs elected to build a new home to replace the one destroyed in the fire.

property; $10,000 for additional living expenses;[2] and $2,500 for debris removal. (See policy at section I coverages.) Defendant eventually paid the policy limits for plaintiffs' loss of real property, unscheduled personal property and debris removal.

A dispute arose as to plaintiffs' claim for additional living expenses. On April 11, 1997, defendant advanced plaintiffs $1,000 on the additional living expenses claim. In November 1997, plaintiffs submitted a listing of additional living expenses of $6,147.02. Defendant has calculated plaintiffs' additional living expense to be $2,700, and has paid this amount to plaintiffs.

Plaintiffs contend that defendant made its determination and evaluation of the additional living expenses claim without waiting to determine the expenses plaintiffs would actually incur and without waiting to ascertain the time reasonably required to establish plaintiffs in their new home. Specifically, plaintiffs aver that defendants arbitrarily calculated plaintiffs' additional living expenses to be $2,200 and later $2,700, without considering that plaintiffs were paying rent of $625 per month for living quarters for themselves, their three children and the family dog. On April 8, 1999, plaintiffs filed their complaint against defendant, alleging both breach of contract and bad faith. Material to this motion are plaintiffs' allegations of bad faith contained in Count II of the complaint.

---

2. The policy provides that the insurer will "pay the necessary and reasonable increase in living costs you incur to maintain the normal standard of living of your household if a part of the insured premises is made unfit by an insured loss. We pay only for the period of time reasonably required to make the insured premises fit for use or to settle your household in new quarters, whichever is less. This period is not limited by the policy period." (See policy at coverage D—additional living costs and loss of rent coverage.)

Defendant contends that it calculated plaintiffs' additional living expenses based upon the time necessary to rebuild a home of the same size and kind as that insured under the subject insurance policy. Defendant views the instant matter as a dispute over the amount of benefits to which plaintiffs are entitled. Thus, defendant has filed the instant motion for summary judgment, averring that this matter does not rise to the level of bad faith under section 8371 of the Judicial Code, 42 Pa.C.S. §8371.

### A.

The standard to be utilized in addressing defendant's motion for summary judgment is set forth by Pennsylvania Rule of Civil Procedure 1035.2, which provides:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

"The moving party has the burden of proving the nonexistence of any genuine issue of material fact based upon the pleadings, depositions, answers to interrogatories, admissions on file, affidavits, and reports signed

by an expert that would, if filed, comply with Rule 4003.5(a)(1)." Pa.R.C.P. 1035.1

The "non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ertel v. Patriot-News Company,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996). The court must "resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law." *Merriweather v. Philadelphia Newspapers Inc.,* 453 Pa. Super. 464, 470-71, 684 A.2d 137, 140 (1996), *allocatur denied,* 548 Pa. 628, 693 A.2d 967 (1997) (citing *Accu-Weather Inc. v. Prospect Communications,* 435 Pa. Super. 93, 98-99, 644 A.2d 1251, 1254 (1994)).

## B.

"The Pennsylvania Supreme Court has held that an insurer must act with the 'utmost good faith' toward its insured. *Fedas v. Insurance Company of Pennsylvania,* 300 Pa. 555, 558, 151 A. 285, 286 (1930)," quoted in, *Romano v. Nationwide Mutual Fire Insurance Co.,* 435 Pa. Super. 545, 550, 646 A.2d 1228, 1231 (1994); see also, *Dercoli v. Pennsylvania National Mutual Insurance Co.,* 520 Pa. 471, 554 A.2d 906 (1989); *Cowden v. Aetna Casualty and Surety Co.,* 389 Pa. 459, 134 A.2d 223 (1957). The heightened duty of good

faith is necessitated by the special relationship between an insurer and its insured and by the nature of the insurance contract. *Romano,* 435 Pa. Super. at 550-51, 646 A.2d at 1231. Implied in a policy of fire insurance is a promise by the insurer that it will exercise reasonable care in investigating an insured's claim, and that the claim will not be rejected except for good cause. *Diamon v. Penn Mutual Fire Insurance Co.,* 247 Pa. Super. 534, 550, 372 A.2d 1218, 1226 (1977); see also, *Parasco v. Pacific Indem. Co.,* 920 F. Supp. 647, 656 (E.D. Pa. 1996) ("The duty of fair dealing under Pennsylvania law requires the insurer to conduct its investigation in a fair and objective manner and to deny insured's claim only if good cause exists to do so.").

In Pennsylvania there is no common-law remedy for bad faith on the part of an insurer. Rather, the remedy is purely statutory, *D'Ambrosio v. Pennsylvania National Mutual Insurance Co.,* 494 Pa. 501, 507, 431 A.2d 966, 970 (1981); *Terletsky v. Prudential Property and Casualty Insurance Co.,* 437 Pa. Super. 108, 124, 649 A.2d 680, 688 (1994), *appeal denied,* 540 Pa. 641, 659 A.2d 560 (1995); *Romano,* 435 Pa. Super. at 552, 646 A.2d at 1232. Section 8371 of the Judicial Code provides:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer." 42 Pa. C.S. §8371. There is, however, no statu-

tory definition of bad faith, and the concept has not been addressed by the Supreme Court.

The Superior Court has defined "bad faith" as "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Romano,* 435 Pa. Super. at 553, 646 A.2d at 1232 (quoting Black's Law Dictionary 139 (6th ed. 1990)) (citations omitted); *O'Donnell ex rel. Mitro v. Allstate Insurance Co.,* 734 A.2d 901, 904 (Pa. Super. 1999); *MGA Insurance Co. v. Bakos,* 699 A.2d 751, 754 (Pa. Super. 1997); *Terletsky,* 437 Pa. Super. at 124-25, 649 A.2d at 688.

Generally, recovery on a bad faith claim requires clear and convincing evidence[3] that the insurer had no reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded said lack of reasonable basis for denying benefits. *O'Donnell,* 734 A.2d at 906; *Bakos,* 699 A.2d at 754; *Terletsky,* 437 Pa. Super. at 125, 649 A.2d at 688. In evaluating the conduct of an insurer under section 8371, this court may look to: (1) other cases construing the statute and the law of "bad faith" generally; (2) the plain meaning of the terms used in the statute; and (3) other statutes addressing the same or similar subjects. *O'Donnell,* 734 A.2d at 906; *Bakos,* 699 A.2d at 754; *Romano,* 435 Pa.

---

3. Bad faith must be proven by clear and convincing evidence and not merely insinuated. *Terletsky,* 437 Pa. Super. at 125, 649 A.2d at 688, citing *Cowden,* 389 Pa. at 472, 134 A.2d at 229; see also, *Hall v. Brown,* 363 Pa. Super. 415, 420, 526 A.2d 413, 416 (1987), *appeal denied,* 522 Pa. 624, 564 A.2d 916 (1989).

Super. at 555, 646 A.2d at 1233. Further, conduct that violates the Unfair Insurance Practices Act (UPIA) may also be considered when determining whether an insurer acted in bad faith under section 8371. *O'Donnell,* 734 A.2d at 906; *Romano,* 435 Pa. Super. at 554, 646 A.2d at 1233; see also, 40 P.S. §1171.5.[4] Additionally, the conduct of an insurer during the pendency of litigation may be considered as evidence of bad faith under section 8371. *O'Donnell,* 734 A.2d at 907, citing *Rottmund v. Continental Assurance Co.,* 813 F. Supp. 1104, 1109-10 (E.D. Pa. 1992). Moreover, an action for bad faith may extend to the insurer's investigative process if the insurer acted in bad faith therein. *Id.;* see also, *Diamon,* 247 Pa. Super. at 550, 372 A.2d at 1226.

*Terletsky* held that an insurer's low settlement offers to the insureds prior to uninsured motorist arbitration were not indicative of bad faith, so as to support a claim of bad faith refusal to settle, given doubts as to the extent of the insureds' injuries, lack of reference to the injuries in the police report, and lack of serious dam-

---

4. The UPIA provides, inter alia, that:

"Any of the following acts if committed or performed with such frequency as to indicate a business practice shall constitute unfair claim settlement or compromise practices.

"(i) Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue . . .

"(iii) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

"(iv) Refusing to pay claims without conducting a reasonable investigation based upon all available information . . .

"(vi) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear.

"(vii) Compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons . . . ." 40 P.S. §1171.5(a)(10)(i), (iii-iv), (vi-viii).

age to insureds' vehicle, coupled with insurer's estimate that each driver involved was 50 percent liable for the accident. *Terletsky,* 437 Pa. Super. at 126-27, 649 A.2d at 689. *Bakos* held that, where the insured did not allege that insurer had no reasonable basis for denying benefits under the policy or that insured knowingly or recklessly disregarded its lack of reasonable basis for such denial, the insurer did not act in bad faith by appealing the award of an arbitration panel. *Bakos,* 699 A.2d at 755. Similarly, *O'Donnell* determined that insured's bald assertions that the insurer acted in bad faith by: (1) propounding allegedly frivolous interrogatories; (2) failing to accept or deny the claim after the insured "submitted to a lengthy deposition;" and (3) requesting additional information during the pendency of trial were insufficient to show that the insurer acted in bad faith. *O'Donnell,* 734 A.2d at 907.

## C.

In the instant matter, plaintiffs contend that, without determining the additional living expenses actually incurred by plaintiffs during the time period reasonably required to make the insured premises fit for use or to settle plaintiffs' family into new quarters, defendant adopted a position 20 days after the fire, on April 30, 1997, that defendant would pay only $2,200 on plaintiffs' additional living expenses claim. This amount was increased by $500 after plaintiffs submitted their total additional living expenses incurred between the date of the fire and the date plaintiffs moved into their new home. Plaintiffs aver that defendant has not provided any verification concerning the availability and cost of *suitable* rental units available at the necessary time and in plaintiffs' school district. Plaintiffs point to the deposition

testimony of defendant's claims adjuster, Keith Leppert in support to their contention that defendant did not conduct an independent investigation of the availability of suitable rental units at the time it became necessary for plaintiffs to relocate. (See deposition of Keith Leppert at 78-79.) Plaintiff Judith Riethmiller's affidavit indicates that by April 28, 1997, she had located five rental properties, which ranged from $474 to $1,200 in monthly rent. (Affidavit of Judith Riethmiller at ¶¶3-4.) All of the rentals required a 12-month lease and excluded pets; making said rental units unsuitable for plaintiffs' needs. *Id.* Moreover, only one of the rentals was located in the West Middlesex School District. *Id.* Plaintiffs eventually rented living space from plaintiff Judith Riethmiller's parents for $625 per month with an addition $4 per day charge for boarding plaintiffs' dog. Plaintiffs aver that defendant ignored this actual rental expense in calculating plaintiffs' additional living expenses.

As further evidence of defendant's bad faith, plaintiffs point to defendant's alleged efforts to limit the period of plaintiffs' additional living expenses to a four-month period immediately following the fire. The policy provides for the payment of additional living costs incurred within "the period of time reasonably required to make the insured premises fit for use or to settle your household in new quarters, whichever is less." (See policy at coverage D—Additional living costs and loss of rent coverage.) Plaintiffs aver that they could not reasonably replace the residence lost in this period based upon: (1) the one month needed to arrange for bank financing; (2) the one month needed for the contractor to acquire materials and subcontractors; and (3) the four

months necessary for actual construction. (Affidavit of Judith Riethmiller at ¶9.) Plaintiffs aver that defendant was aware of these factors and circumstances and chose to disregard them.

Defendant argues that the instant matter is merely a dispute over the value of plaintiffs' additional living expenses claim and does not rise to the level of bad faith. Defendant contends that it attempted in good faith to arrive at a fair valuation of plaintiffs' additional living expenses and that plaintiffs frustrated such attempts. Further, defendant contends that plaintiffs refused to allow the claims adjuster to work with plaintiffs in their attempt to arrive at such a fair valuation. (Deposition of Gary Miller at 12-19.) Defendant also argues that plaintiffs did not work with the adjuster is attempting to find temporary living quarters, and that plaintiffs negotiated the aforesaid lease agreement with plaintiff Judith Riethmiller's parents without giving defendant the opportunity to negotiate the agreement or to find an alternative. Finally, defendant contends that plaintiffs did not make it aware of the terms of the lease agreement until several months after plaintiffs had begun residing in the leased premises. (*Id.* at 23.) Defendant submits that the foregoing indicates that, as a matter of law, it did not act in bad faith with respect to plaintiffs' additional living expenses claim.

Initially, it must be noted that despite defendant's argument, a dispute over the value of an additional living expense claim may implicate bad faith. Indeed, the majority of bad faith claims involve disputes over the valuation insurance claims, a fact reflected in the very definition of "bad faith" quoted above. *Romano,* 435 Pa. Super. at 553-54, 646 A.2d at 1232. Plaintiffs contend

that the facts they have set forth are indicative of an unfounded refusal, by defendant, to pay additional living expenses to which plaintiffs are entitled under the policy. As such, there is no merit to defendant's contention that the instant matter cannot implicate bad faith because it is a dispute over the value of plaintiffs' claim.

Further, plaintiffs have alleged specific conduct on the part of the defendant that may constitute bad faith, to wit: (1) adopting a position 20 days after the fire that it would pay only $2,200 on plaintiffs' additional living expenses claim; (2) not investigating the availability and cost of suitable rental units available at the necessary time and in plaintiffs' school district; (3) ignoring plaintiffs' actual rental expenses in calculating the additional living expenses; and (4) limiting plaintiffs' additional living expenses to a four-month period despite knowledge that it would take at least six months to complete construction of plaintiffs' new home. The above-quoted requirements for bad faith require factual determinations of defendant's state of mind. *Reading Tube Corp. v. Employers Insurance of Wausau,* 944 F. Supp. 398, 403 (E.D. Pa. 1996). Plaintiffs have alleged more than the insinuations and bald assertions of bad faith deemed insufficient by *Bakos* and *O'Donnell.* See *Bakos,* 699 A.2d at 755; *O'Donnell,* 734 A.2d at 907. Rather, plaintiffs' evidence may be considered conduct that imports a dishonest purpose and indicates a breach of a known duty through some motive of self-interest or ill will. See *Romano,* 435 Pa. Super. at 553-54, 646 A.2d at 1232. Thus, a jury could find that defendant acted in bad faith in investigating and settling plaintiffs' additional living expenses claim. See *e.g., Reading Tube,* 944 F. Supp. at 403; see also, *Diamon,* 247 Pa. Super. at 550, 372 A.2d at 1226; 40 P.S. §1171.5(a)(10)(iv).

Defendant's assertions that the dispute in the valuation of plaintiffs' additional living expenses claim resulted from plaintiffs' frustration of defendant's investigation may prove to be correct. However, defendant's assertions are not uncontroverted and this court must, for purposes of summary judgment, view the facts in a light most favorable to plaintiffs, as the nonmoving parties herein. *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991). Viewing the facts here in such a light shows the existence of a genuine issue of material fact regarding defendant's actions and motivations in assessing and valuing plaintiffs' additional living expenses claim. Because summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law, *Merriweather,* 453 Pa. Super. at 470-71, 684 A.2d at 140, and because plaintiffs have adduced such material facts to indicate the existence of a genuine issue as to whether defendant acted in bad faith in investigating and settling plaintiffs' additional living expenses claim, defendant's motion will be denied.

Hence, this order:

## ORDER

And now, May 30, 2001, it is hereby ordered that defendant's motion for summary judgment is denied.