Ronald J. RANKIN and Liz Rankin, Plaintiffs,

v.

**RIGHT ON TIME MOVING & STORAGE, INC., et al., Defendants.**

No. CIV. 01–45–B–K.

United States District Court, D. Maine.

Sept. 16, 2002.

Arthur J. Greif, Julie D. Farr, Gilbert & Greif, P.A., Bangor, ME, for Plaintiffs.

Bruce C. Mallonee, Ajaz S. Fiazuddin, Rudman & Winchell, Bangor, ME, Martica S. Douglas, James E. Fortin, Douglas, Denham, Buccina & Ernst, Portland, ME, James E. Fortin, Douglas, Denham, Buccina & Ernst, Portland, ME, Carl F. Rella, Rella & Lister, Bangor, ME, for Defendants.

## MEMORANDUM OF DECISION[1]

KRAVCHUK, United States Magistrate Judge.

Defendant, Allstate Insurance Company ("Allstate") has filed a supplemental motion for summary judgment on the breach of contract claim (Count III) and the claim for unfair claims settlement practices (Count VIII). (Docket No. 64.) I gave Allstate specific leave to file this supplemental motion. These counts remained after Allstate's previous motion for summary judgment (Docket No. 26) was grant-

1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

ed in part and denied in part. (Docket No. 51.) I now **GRANT** Allstate's motion for summary judgment on Counts III and VIII.

### Summary Judgment

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter at law." Fed.R.Civ.P. 56(c). A fact is "material" when it has the "potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A "genuine issue" exists when the evidence is "sufficient to support rational resolution of the point in favor of either party." *Id.* Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidence is to be viewed, and justifiable inferences are to be drawn, in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### Facts

The following facts are derived from the parties' initial statement of material facts (Docket Nos. 27 & 35) and plaintiffs' statement of material facts (Docket No. 67) supporting their response to Allstate's supplemental motion for summary judgment.[2]

2. Allstate did not reply to the Rankins' statement of material facts (Docket No. 67), thus pursuant to Dist.Me.Loc.R. 56(e) the Rankins' statement of facts are deemed admitted to the extent they are supported by the record. Nor did Allstate file any supplemental statement of material facts in support of this motion. I

While the Rankins lived in California, they purchased a homeowners' insurance policy from Allstate (hereinafter "the policy") on their San Jose home. According to the Rankins, they spoke with their Allstate agent prior to moving to Maine and she advised against canceling the homeowners' policy because they would be "fully covered" if anything happened to their property during the move. When the Rankins later moved to Maine, they suffered a loss when the moving company damaged some of their household goods and failed to deliver some of their property. In the fall of 2000, the Rankins sent the Allstate appraiser documents listing damaged and undelivered items. In September, the Rankins sent the appraiser an updated list of damaged and missing items.

Beginning September 24, 2000, Allstate's communications with the Rankins were conducted through the Rankins' attorney, A.J. Greif. On September 28, 2000, Greif sent Allstate a letter demanding payment on the Rankins' claim. Greif received a letter dated October 3, 2000, from Allstate's claims supervisor, Bob Toolin. Toolin enclosed a copy of the policy's listed perils and advised Greif that the only peril applicable to the Rankins' loss is the "vehicle" peril. In short, Allstate recognized the Rankins' damaged property as covered under the policy, but it did not believe the missing items were covered.

It is undisputed that the policy's theft peril provision defines "theft" to include "disappearance of property from a known place when it is likely that a theft has occurred." The policy's definition requires that "any then must be promptly reported to the police." The Rankins did not immediately report a theft to the police because they were waiting to see if the moving companies, Right–On–Time Moving & Storage and SI Trucking, would be able to locate their missing items. On December 19, 2000, the Rankins reported their missing items to the police. At this point the Rankins concluded that enough time had passed to justify the conclusion that the missing items were no longer likely to be found. That same month, the Rankins' counsel sent a letter to Allstate asserting that the Rankins' loss was covered under the "theft" peril in the homeowners' policy and announced that the Rankins would be bringing a claim under Maine's Unfair Claims Practices Act in an action if Allstate did not promptly dispute the damages claim. Greif was not asked by Allstate to provide additional information regarding the applicability of the theft peril. At this time, the most recent claim the Rankins had submitted was their September 24, 2000 updated list of damaged items and missing items.

On January 23, 2001, Toolin sent Greif a property loss worksheet regarding the valuation of items included in the damaged property claim. Enclosed with the property loss worksheet was a letter dated January 23, 2001, from Toolin explaining the worksheet. He wrote that many of the Rankins' claimed items are not listed on the worksheet because the items are missing, have missing parts, or were dragged by the movers (i.e. were not covered under the "vehicle" peril). Additionally, Toolin requested information for co-insurance purposes regarding the Rankins' new homeowners' carrier.

therefore rely upon the facts that were developed by Allstate during the prior motion on issues related to the course of the litigation, plaintiffs' version of events, and the court record itself. Both parties argued extensively in their memoranda that neither plaintiffs' attorneys nor Allstate's attorney could add any material facts about anything untoward that took place during the course of this litigation, plaintiffs maintaining that their attorneys would not even be witnesses at the trial of this matter because the previously developed record speaks for itself.

On February 13, 2001, the Rankins submitted to Allstate a letter of loss listing the items which were never delivered by the movers. The total loss in missing and damaged property was $97,583.00. Allstate made a February 28, 2001 payment on the damages claim for its pro-rata share of the undisputed loss. On March 2, 2001, the Rankins initiated the present action filing a complaint that did not include a claim for violation of 24–A M.R.S.A. § 2436–A(1)(E). The Rankins' initial mandatory disclosures, mailed to counsel for Allstate on June 1, 2001, contained three lists of the Rankins' missing items which then totaled $76,170.15. The Rankins sent supplemental disclosures on June 13, 2001, containing a list of missing property that totaled $82,495.27

A settlement conference was held with the Rankins and all parties' counsel on October 1, 2001, during which time Allstate had the opportunity to ask the Rankins for any further information in order to investigate the theft claim. Early October, 2001, Allstate requested a copy of the police report, which the Rankins readily provided. The Rankins' depositions were taken by co-defendant Concord on December 6, 2001. Allstate made an initial payment on the theft claim on December 19, 2001, in the amount of $38,510.94 and made subsequent payments on May 29, 2002, and July 17, 2002 in the amounts of $10,380.12 and $14,872.21 respectfully.

In a letter dated December 19, 2001, Allstate demanded that the parties undergo the appraisal process provided for in the policy in order to determine the amount of the Rankins' loss. Such a request had not been made prior to this. At that time, the present action was scheduled for trial commencing on February 11, 2002.

## Discussion

### A. Unfair Claims Settlement Practices Act Claim

Count VIII of plaintiffs' June 19, 2001, amended complaint alleges a violation of the Unfair Claims Settlement Practice Act, 24–A M.R.S.A. § 2436–A(1)(E), which states that an insured may recover reasonable attorneys fees and a one and a half percent interest on damages if his or her insurer, without just cause, fails "to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." 24–A M.R.S.A. § 2436–A(1)(E). Thus, to have a violation of § 2436–A(1)(E), the insurer must fail, without just cause, to effectuate a prompt, fair and equitable settlement of claims in which liability has become reasonably clear. Allstate argues that it was not clear whether the items the Rankins previously claimed as "missing" qualified for coverage under the policy's "theft" peril, which covered items that disappeared from a known place thereby indicating the likelihood of theft. It asserts that it did not have an opportunity to investigate the circumstances underlying the theft claim before becoming embroiled in litigation and forced to relinquish control to the Court and counsel as to both timing and the investigation of the theft claim. There is no triable issue of fact on the question of whether Allstate failed to effectuate a prompt settlement between February 13, 2001, when the Rankins initially presented Allstate with their first "finalized" version of the loss claim relating to the "missing" items and March 2, 2001 when they filed this lawsuit. Indeed they were not even sued on this statutory violation in the initial complaint.

The Rankins maintain that although Allstate could not ethically contact the plaintiffs directly subsequent to the institution of the present action, there was nothing to

prevent Allstate's counsel from conducting an investigation via interrogatories, depositions, document requests, or even requesting an informal conference with them with or without their counsel. Their contention is that it is this failure that creates the liability asserted in Count VIII. The Rankins' premise is inaccurate. As both parties' arguments involve consideration of the procedural history of this action, I will take judicial notice of the court's own records to the extent such information is not provided in the parties' statements of material facts before me.

The Rankins submitted their claim for stolen/missing items to Allstate on February 13, 2001 and then two weeks later, on March 2, 2001, they filed the present action against Allstate. Federal Rule of Civil Procedure 26(d) prohibits parties from engaging in discovery from any source until there has been a conference of parties as required by Rule 26(f), an agreement by the parties, or a court order. None of these events happened until May 7, 2001, when I issued a scheduling order, requiring the parties to confer pursuant to Rule 26(f) by May 21, 2001. In fact, the issues in this case were not fully joined until May 2, 2001, when defendant Right–on–Time filed its apparently timely answer. However, Allstate's window of opportunity that opened May 7, was cut short. On June 4, 2001, the Rankins filed a motion to amend their complaint to add new claims, including the unfair claims settlement claim at issue here, and to add co-defendants Concord Group Insurance and SI Trucking. Upon granting this motion to amend, I ordered a stay of the scheduling order pending the completion of service on the new defendants.[3] I did not issue an

amended scheduling order until September 14, 2001, as the issues surrounding the new defendants were not fully joined until August 21, 2001, when Right–on–Time filed its answer to the cross-claim filed by defendant Concord General. Thus, no formal discovery would have been conducted between June 2001, and September 2001. The amended scheduling order required plaintiffs to designate experts by September 26, 2001; defendants to designate experts by October 26, 2001; and discovery to close on December 14, 2001. According to the summary judgment record, in early October 2001, Allstate requested a copy of the Rankins' December 2000 police report regarding the theft. On December 6, 2001, the Rankins' deposition was taken and by December 19, 2001, Allstate had sent the first payment on the Rankins' theft claim. Subsequent payments on the claim were made in May and July of 2002.

■ In sum, Allstate initially had a two week opportunity from February 13, 2001 to March 2, 2001 and then a one-month window of opportunity from May 2001 to June 2001, to "investigate" the theft claim through either its own adjustors or formal discovery procedures. During this time frame not all of the parties were before the court as the Rankins' other insurance company was not included in the litigation nor was the trucking company that was allegedly involved in the loss of the Rankins' items. As a matter of law, Allstate's liability was not reasonably clear at this juncture because not all potentially liable parties were before the court. Thus, as of June 2001, when the unfair settlement practices claim was added to the com-

---

**3.** It would have been a costly and unwise waste of resources for Allstate and Right–On–Time to engage in depositions and other discovery when two new parties were being added to the litigation, one of which was another insurance company that would likely also

have some portion of the responsibility for payment of the claim. Allstate's counsel's failure to informally negotiate a settlement with Attorney Greif at this juncture was clearly with just cause in the context of this litigation.

plaint, Allstate had not violated the statute.

■ Allstate's next window of opportunity opened September 14, 2001, when the scheduling order was amended. The three-month gap from September 14, 2001 to December 19, 2001, at which time Allstate ultimately paid a portion of the claim, as a matter of law does not amount to a failure to effectuate a prompt settlement. Statutes requiring insurers to adjust claims fairly and promptly and to make a reasonable offer to settle claims are penal in nature and are strictly construed. *See Burne v. John Hancock Mutual Life Ins. Co.*, 403 A.2d 775, 777 (Me.1979). There is no reason to read the statute as encompassing cases like the present where ongoing litigation, and not the insurer's actions, is responsible for impeding the settlement of a claim. Even if Allstate had failed to effectuate a prompt settlement, there is no evidence in the record showing that Allstate was "without just cause." "[A]n insurer acts without just cause if it refuses to settle claims without a reasonable basis to contest liability, the amount of any damages or the extent of any injuries claimed." 24–A M.R.S.A. § 2436–A(2). There is nothing in the record indicating that during September 19, 2001, to December 19, 2001, Allstate did not have a reasonable basis to contest the amount of damages or the extent of injuries claimed, thus even if it should have concluded that a "theft" occurred when it reviewed the police report in early October, Allstate was not without "just cause" in failing to immediately pay the face amount of the Rankins' rather large claim.

The Rankins argue that § 2436–A(1)(E) does not contain a "litigation exception" absolving the insurer from its obligation to effectuate a prompt settlement. There is very little caselaw on § 2436–A(1)(E) and what exists is not directly on point. However, the Law Court in *Curtis v. Allstate Ins. Co.*, 787 A.2d 760 (Me.2002), found that the insurer had a reasonable basis for contesting liability and therefore did not violate § 2436–A(1)(E) when it delayed paying the entire policy amount owed because a settlement was pending in an underlying interpleader action that would allow the insurer to offset its liability to plaintiffs. *See Curtis*, 787 A.2d at 769. The Rankins rely on an obscure case from Pennsylvania with little relevance to the Maine statute to support their notion that the conduct of an insurer during litigation may be considered evidence of bad faith.[4] Nevertheless, the Rankins do not provide any evidence in the record that Allstate engaged in any such behavior or was responsible for prolonging the litigation. *Cf. Curtis*, 787 A.2d at 765 (noting that during summary judgment analysis, which resulted in judgment for the insurer, the Superior Court stated in a "well reasoned opinion" that there was no evidence of corporate "foot-dragging" or evidence that the insurer did anything to prolong litigation, unreasonably delay matters, or unreasonably interpret the law or the policy language). As the Rankins were responsible for the failure to include all potentially liable parties in the complaint and for the scheduling order stay from June to September 2001, they cannot complain that their claim was tied up in

---

4. The case plaintiffs rely on, *Riethmiller v. Bedford County Grange Mut. Ins. Co.*, 52 Pa. D. & C.4th 190 (Pa.Com.Pl., May 30, 2001), is not applicable to § 2436–A(1)(E) because subsection (E) does not require a finding of bad faith. I do not quarrel with the Rankins' contention that given the right facts a court might conclude that conduct during the course of litigation should be attributable to the insurance company and could result in liability under the Maine statute. This case does not come close to presenting any such facts.

litigation. Given the fact that this case involved at least four attorneys representing the plaintiffs, two insurance companies, and a trucking company from Los Angeles, California, any rational analysis of Allstate's conduct from mid-September to mid-December would lead to the conclusion that there was just cause for the delay of this matter. The Rankins apparently take the view that because Allstate did not immediately pay all the money they demanded, Allstate violated this statutory provision. There is no support in any case for that notion.

## B. Breach of Contract

The Rankins also allege that Allstate breached the insurance contract by failing to pay the undisputed amount of the theft claim in a reasonably timely fashion. In my original summary judgment order I allowed the breach of contract claim to proceed for two different reasons. First and foremost the Rankins argued that Allstate had not paid them for the stolen items in a "reasonably prompt fashion" in accordance with their contractual obli-

gations.[5] Based upon the record and the arguments put forth to me at that time, I concluded that it would be possible for a reasonable factfinder to conclude that Allstate should have taken more prompt action between December 19, 2000, when the Rankins filed their police report and first claimed that Allstate had liability under the theft peril coverage and December 19, 2001 when it agreed that it did have liability under the policy.

■ On the record I now have before me, I have accounted for Allstate's actions during that one year period, the bulk of which time it was involved in this litigation. It is true that Allstate's adjustor denied liability for the "missing property" in January 2001, before litigation commenced and did not request the police report or investigate further into the circumstances. In fact, the Rankins claimed this breach in Count III of the original complaint filed on March 2, 2001. However, as a practical matter Allstate could not have made a prompt payment until February 13 when the total loss claim was filed

---

5. There were also some small disputes regarding the value of certain damaged items and the failure to pay for the Portmeirion bowl. As I was unable to determine whether Allstate was entitled to summary judgment on the "theft" breach of contract issue as a matter of law, I could not say that the contract had not been breached by Allstate. As I have now concluded that Allstate did not breach the contract by failing to make timely payment of the theft claim, Allstate is entitled to invoke the contract provision requiring arbitration of any remaining disputes regarding the value of items stolen or damaged. Based upon the information I have before me, Allstate has paid close to $72,000.00 on this claim and based its payment on a theft and damage valuation of $79,666.70, the difference representing the proportionate share of the damage claim that was paid by Concord General. Concord General had no liability for any portion of the theft claim, the much larger of the two claims. Bear in mind that the Rankins' first claim of loss, presented

February 13, 2001, claims a "minimum total loss" of $97,583.00. The June 1, 2001, initial mandatory disclosure by the Rankins put the total loss at $97,159.34 ($20,989.19 in damaged property and $76,170.15 in stolen property). Two weeks later the Rankins provided a supplemental disclosure claiming the loss was $106,004.46 ($23,509.19 and $82,495.27). The Rankins had a lot of property stolen or damaged and assessing valuations was a difficult and painstaking process. For instance, the Rankins' claim included eight Portmeirion tumblers valued by them at $28.00 each for a total of $224.00. (Docket No. 37, Ronald Rankin Affidavit, Exh. D). Allstate paid this loss in the amount of $120.00 representing an actual *replacement cost* of $15.00 per tumbler. (Docket No. 65, Supplemental Affidavit of Martica S. Douglas, Exh. A). These types of discrepancies account for an extremely large portion of the difference between the various claims and what has been paid by Allstate.

264

even if it had agreed to its liability for the "missing" property. We know that from March 2 forward Allstate has been embroiled in this litigation. Although the Rankins had first presented a list of damaged and missing property and Allstate began its appraisal process vis-à-vis the damaged property in September 2000, it is undisputed that during the period up to December 2000, there had been no police report regarding stolen property and the policy required that a "theft" claim had to be reported to the police. Therefore Allstate's refusal to accept liability for the "theft" claim prior to December was in accordance with the contract.

I have already explained that between February 13 and March 2 Allstate did not have sufficient time to effectuate a prompt payment of this large claim, even if it had assumed liability for the theft loss. The real question is whether Allstate breached the contract by simply denying liability for the stolen property between December 19, 2000, and March 2, 2001 when this lawsuit was first filed. I misconstrued the issue in my prior order when I described the continuum as stretching from December 2000 to December 2001, because at that time I did not consider the actual course of the litigation as reflected in the court's own docket. Allstate has now caused me to do so.

On March 2, 2001, the parties knew the property had gone missing and knew that Allstate was denying liability. The problem was that no one knew where the "missing" items were. That is so because SI Trucking, the last entity to have actual custody and control of the property, had also gone missing. A default was entered against it in September 2001 during the course of this litigation. Initially, nobody, including SI Trucking's employer, Right-on-Time, seemed able to ascertain whether the property might be sitting in a warehouse somewhere, abandoned by SI Truck-

ing. These undisputed facts were set forth in the first motion for summary judgment. I am satisfied that no reasonable factfinder could conclude that Allstate breached its contract of insurance between December 19, 2000 and March 2, 2001 when it refused to accept Attorney Greif's claims that the missing items had been stolen. Therefore there is no issue of fact remaining for a jury to consider under the breach of contract claim, Allstate having now conceded its contractual liability for the stolen property.

Based upon the foregoing I now **GRANT** Allstate's supplemental motion for summary judgment. (Docket No. 64). I direct the clerk to enter judgment for Allstate Ins. Co. on the remaining portions of the complaint. I further direct that Docket No. 19, the Rankins' motion for entry of a default judgment against SI Trucking be set for disposition forthwith in order to enable the entry of final judgment in this case.

*So Ordered.*